# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 15-476V
Filed: June 17, 2016

```
* * * * * * * * * * * * * * *
ROY BUSH,                        *        Unpublished
                                 *
            Petitioner,          *        Interim Attorney's Fees and Costs;
                                 *        Contested; Reasonable Basis.
v.                               *
                                 *
SECRETARY OF HEALTH              *
AND HUMAN SERVICES,              *
                                 *
            Respondent.          *
* * * * * * * * * * * * * * *
```

Ronald C. Homer, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for petitioner.
Linda S. Renzi, United States Department of Justice, Washington, DC, for respondent.

## DECISION DENYING INTERIM ATTORNEY'S FEES AND COSTS[1]

**Roth,** Special Master:

      On May 11, 2015, Roy Bush ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2]  (The "Vaccine Act" or "Program").  Petitioner alleged that he had sustained a shoulder injury related to vaccination administration ("SIRVA") after he was administered an influenza ("flu") vaccine on October 7, 2013, as listed on the Vaccine Injury Table.[3]  Petition ("Pet."), ECF No. 1.  Pursuant to Section 15 (e) of the Vaccine Act, petitioner's counsel now seeks an award for interim

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, codified as amended at 44 U.S.C. § 3501 note (2012). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] 42 C.F.R. § 100.3 (2011).

attorneys' fees and costs.  After careful consideration, the undersigned has determined to **deny the request in full** for the reasons set forth below.

## I.    Facts

Petitioner has a past medical history of multiple medical issues for which he has seen his primary care physician ("PCP") on a regular basis for years.  *See generally* Petitioner's Exhibit ("Pet. Ex.") 2.  According to petitioner, he was a mason and this profession "cause[ed] a number of issues and wear and tear on [his] body" as well as "issues with [his] joints and back."  Pet. Ex. 9 at 1.

On October 7, 2013, petitioner presented for a routine checkup and amongst a host of other complaints, complained of on-going back and right shoulder pain, for which he scheduled a shoulder injection three days later.  Pet. Ex 2 at 63-66.  Mr. Bush's PCP noted that he had decreased range of motion in his right shoulder, but his exam was otherwise unremarkable.  Pet. Ex. 2 at 65.  During this appointment, petitioner received a flu vaccine in the left deltoid.  Pet. Ex. 1 at 1; Pet. Ex. 2 at 65.  Three days later, on October 10, 2013, petitioner returned to his PCP with continuing complaints of right shoulder pain and aching.  A physical exam revealed decreased range of motion in his right shoulder and limited shoulder abduction; petitioner's records do not reflect any complaints of pain in the left arm or shoulder.  Pet. Ex. 2 at 59-62.  The PCP's assessment was right shoulder tendonitis and shoulder impingement.  Pet. Ex. 2 at 61-62.  Triamcinolone and Xylocaine were injected into the right shoulder and no future visit was scheduled.  Pet. Ex. 2 at 62.

Petitioner returned to his PCP on November 1, 2013, with complaints of right elbow pain when making a fist and twisting things.  Pet. Ex. 2 at 55.  He also complained of right shoulder pain; it was noted that he had decreased range of motion in right shoulder and his right elbow was tender.  Pet. Ex. 2 at 57-58.  Notations from this visit note that the injection administered on October 10, 2013 "helped" his shoulder pain and he was "doing well."  Pet. Ex. 2 at 58.

On January 9, 2014, petitioner presented to his PCP, complaining of pain in his left arm.  Pet. Ex. 2 at 50.  The petitioner stated that he "[w]oke up 5-6 days ago 1/3/14 and had severe pain in the neck and pain running down over the l shoulder into to [sic] the forearm, no finger pain and no strength either. [T]ingling of the lateral arm on the Left and pain rated severe and when cough [sic] really hurts it.  Taking Tylenol and not helped it at all [.]  [T]ried icy hot and not helped." Pet. Ex. 2 at 50.  His PCP's assessment was "neck pain with headache, and now with L side arm weakness and ongoing pain into the L arm and left neck with L trapezius muscle tightness."  Pet. Ex. 2 at 53.  He was given hydrocodone-acetaminophen, prednisone, and tizanidine for his neck pain and told to return in a week.  Pet. Ex. 2 at 53.

Petitioner returned to his PCP on January 16, 2014, continuing to complain of left arm and left neck pain with left trapezius muscle tightness.  Pet. Ex. 2 at 48.  He tried steroids, but had to stop taking them due to side effects; however, meloxicam helped and he was instructed to continue with meloxicam and lortab.  Pet. Ex. 2 at 48.  An magnetic resonance image ("MRI") without contrast was ordered.  Pet. Ex. 2 at 48-49.  An MRI was performed on February 7, 2014 showing "[s]cattered degenerative changes in the mid cervical spine."  Pet. Ex. 5 at 36-37.

Petitioner's PCP noted that his MRI showed degenerative joint disease of the cervical spine and moderate to moderate-severe foraminal narrowing of C4-C6 nerve roots.  Pet. Ex. 2 at 40

On March 18, 2014, petitioner presented to East Tennessee Brain and Spine with complaints of neck pain, pain into both shoulders, and left upper extremity pain.  Pet. Ex. 5 at 1-4.  It was noted that petitioner's pain "follows a C6 pattern with numbness going all the way down the C6 pattern into his thumb and index finger."  Pet. Ex 5 at 3.  There was some noted weakness, but petitioner stated that it had started to resolve and the pain had "improved a little bit since it started a couple of months ago."  Pet. Ex 5 at 3.  On examination "motor testing of grip, biceps, triceps and deltoid bilaterally in the upper extremities" was intact.  Pet. Ex. 5 at 3.  The impression was "two–level cervical spondylosis at C4-5 and C5-6 with both neck pain and left upper extremity radicular complaints."  Pet. Ex. 5 at 4.

On May 15, 2014, petitioner's PCP noted that petitioner's pain was "mainly in the neck and runs down to the shoulders and both arms, left worse than right."  Pet. Ex. 2 at 35.  It was likewise noted that his "back does not hurt near as much as neck with pain radiating into the l[eft] prox arm and over the trap muscle."  Pet. Ex. 2 at 36.

In June of 2014, petitioner noted that "the pain in my shoulder seemed to improve … thankfully, my left shoulder pain has almost completely resolved."  Pet. Ex. 9 at 2.

## II.    Procedural History

This case was filed on May 11, 2015 and was initially assigned to now-Chief Special Master Dorsey.  Pet.  Several medical records, along with a statement of completion, were filed the next day, May 12, 2015.  Medical Records, ECF Nos. 5, 6; Statement of Completion, ECF No. 7.  On July 21, 2015, Chief Special Master Dorsey conducted a status conference, where she "encouraged the parties to discuss early settlement since, according to the records, Mr. Bush's shoulder injury has mostly resolved."  Scheduling Order, ECF No. 10.  The parties agreed to discuss settlement and two months later, on September 21, 2015, petitioner transmitted a demand to respondent.  Scheduling Order at 1; Status Report, ECF No. 13.

On the same day that petitioner submitted his demand to respondent, September 21, 2015, respondent filed a Rule 4(c) Report.  Respondent's Rule 4(c) Report ("Rule 4"), ECF No. 14.  In her report, respondent suggested that compensation was not appropriate in this case because "his injury is not consistent with SIRVA" and his treating physician "did not associated [sic] petitioner's persistent shoulder pain . . . with his October 7, 2013 flu vaccine."  Rule 4 at 5-7.

The case was reassigned to the undersigned on October 20, 2015.  Notice of Reassignment, ECF No. 16.  Respondent filed a status report on October 21, 2015, in response to petitioner's demand; respondent stated that "settlement discussions are not appropriate at this time" and explained that her reasons were set forth in her Rule 4 filed a month prior.  Status Report, ECF No. 17.  Therefore, a status conference was held and the parties discussed appropriate next steps.  On February 18, 2016, petitioner's counsel filed a status report indicating that he "intends to withdraw as attorney of record."  Status Report, ECF No. 20.  Petitioner's

3

counsel stated that he has been unable to contact petitioner, and that it was unclear how his client wished to proceed. *Id.*

In anticipation of filing a motion to withdraw, Mr. Homer filed a Motion for Interim Attorney's Fees and Costs ("Motion") on February 23, 2016. Motion, ECF No. 21. Respondent filed a Response ("Response") to petitioner's Motion on March 7, 2016. Response, ECF No. 22. On March 17, 2016, petitioner filed a Response to Respondent's Opposition ("Reply"). Reply, ECF No. 23. Petitioner filed a Supplemental Motion for Interim Attorney's Fees and Costs ("Motion 2") on March 17, 2016 and a subsequent Motion to Withdraw as Attorney ("Motion to Withdraw") on April 4, 2016. Motion to Withdraw, ECF No. 25.

The matter is now ripe for decision.

### III.    Applicable Legal Standard

In general, the Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e). Determining whether an application for fees is reasonable is a matter within the discretion of the presiding special master. *See Carrington v. Sec'y of HHS,* 85 Fed. Cl. 319, 322-23 (Dec. 10, 2008). Special masters are afforded considerable discretion when considering motions for attorney fees. For instance, it is within a special master's discretion to reduce fees *sua sponte,* without warning to petitioners. *Sabella v. Sec'y of HHS,* 86 Fed. Cl. 201, 208-09 (Mar. 2, 2009).

### IV.    Discussion

Petitioner filed his initial Motion for Interim Attorneys' Fees and Costs on February 23, 2016 requesting $13,033.50 in attorneys' fees and $701.02 in costs. Motion at 1. In her Response filed on March 7, 2016, respondent objected first to the payment of interim fees and costs in this case, and second to reasonable basis both at the time of filing and throughout the pendency of this case. Response at 1, 4-8. Petitioner filed a Reply and a Supplemental Motion on March 17, 2016. *See generally* Reply; Motion 2. Petitioner's counsel claimed that he did a thorough review of petitioner's case before the petition was filed, refuted some of respondent's factual assertions, and provided support for his interim fee award. Reply at 3-22. Finally, on April 4, 2016, petitioner's counsel filed a Motion to Withdraw as Attorney. Motion to Withdraw at 1.

#### 1.    Challenges to the interim nature of fees and costs.

Interim fees may be paid at the discretion of the special master. *See Avera v. Sec'y of HHS,* 515 F.3d 1343, 1352 (Fed. Circ. 2008) ("Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained.") While they are not routinely awarded, interim fees may be awarded when petitioner's counsel withdraws from a case. See, e.g., *Woods v. Sec'y of HHS*, 105 Fed. Cl. 148, 154 (Fed. Cl. 2012). However, "the mere fact that an attorney plans to withdraw is not necessarily a hardship that triggers an award of interim attorneys' fees and costs." *McKellar v. Sec'y of HHS*, 101 Fed. Cl. 297, 302 (2011).

As set forth below, resolving withdrawing counsel's attorneys' fees and costs at this time is warranted.

## 2. Challenges to initial reasonable basis.

The Vaccine Act permits an award of reasonable attorneys' fees and costs if the petition was "brought in good faith and there was a reasonable basis." §15(e)(1). Reasonable basis is typically viewed as "an objective standard determined by the 'totality of the circumstances.'" *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (May 30, 2014) (citations omitted). This somewhat amorphous standard has often been defined not by what it includes, but rather by what is lacking in cases in which a reasonable basis has been found not to exist. Typically, reasonable basis is not found when "fundamental inquiries are not made." *Di Roma v. Sec'y of HHS,* No. 90-3277, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Additionally, a case may have a reasonable basis when filed, but may lose reasonable basis during the pendency of the case. *Perreira v. Sec'y of HHS,* 33 F.3d 1375, 1376-77 (Fed. Cir. Aug. 31, 1994); *McNett v. Sec'y of HHS,* No. 99-684V, 2011 WL 760314, at *6 (Fed. Cl. Spec. Mstr. Feb. 4, 2011). Furthermore, the burden lies with the petitioner to "affirmatively demonstrate a reasonable basis." *McKellar*, 101 Fed. Cl. at 305. Some of the factors considered when assessing reasonable basis include: "'the factual basis, the medical support, jurisdiction issues', and the circumstances under which a petition is filed." *Chuisano*, 116 Fed. Cl. at 288 (citing *Di Roma*, 1993 WL 496981, at *1). Neither the fact that no medical records or supportive expert opinion was filed nor the fact that the claim was filed beyond the statute of limitations automatically negates a finding of reasonable basis. *Chuisano*, 116 Fed. Cl. at 288 (citations omitted). Furthermore, "[a] looming statute of limitations does not forever absolve a petitioner from his or her obligation to proceed with a reasonable basis to support his claim, at least not if the petitioner hopes to recover any fees and costs." *Chuisano,* 116 Fed. Cl. at 287 (citations omitted).

This is not a case in which petitioner presented on the eve of the statute of limitations, with little or no time to conduct an investigation into the merits. The vaccination alleged herein was administered on October 7, 2013, petitioner's counsel was retained on about July 18, 2014, almost a year before the petition in this matter was filed. Pet.; Motion (Tab 1) at 11. The petition was filed on May 11, 2015, followed by all of the medical records associated with the alleged injury, additional documentation, and a Statement of Completion the next day. Pet.; Notices of Filing, ECF Nos. 5, 6; Statement of Completion, ECF No. 7. Counsel had ample opportunity to assess the viability of the claim before filing the petition.

## 3. Challenges to continued reasonable basis.

Reasonable basis is not only assessed at filing; whether a case maintains reasonable basis may change throughout the pendency of the case. *See Perreira*, 33 F.3d at 1377 ("[W]hen the reasonable basis that may have been sufficient to bring the claim ceases to exist, it cannot be said that the claim is maintained in good faith."); *Heath v. Sec'y of HHS*, No. 08-86V, 2011 WL 4433646, at *11 (Aug. 25, 2011) ("Whether there existed a reasonable basis for maintaining this petition is a more difficult issue, and the answer depends on the point in time examined.").

Again, there is no bright-line rule regarding reasonable basis so a fact specific inquiry must be conducted to determine whether reasonable basis existed as the case continued to develop.  "If petitioner's causation theory is not premised on facts supported by the record, or is not grounded in reputable medical evidence, his espousal of that theory is insufficient to maintain a reasonable basis." *Heath,* 2011 WL 4433646, at *11 (citations omitted). Furthermore, "reasonableness may later come into question if new evidence becomes available or the lack of supporting evidence becomes apparent." *Chuisano,* 116 Fed. Cl. at 288 (citing *Perreira*, 33 F.3d at 1377).

In the program, it is petitioner's burden to establish a "proximate temporal relationship" between the time of vaccination and onset of alleged injury.  *Althen v. Sec'y of HHS*, 418 F.3d 1274, 1279 (Fed. Cir. 2005). To satisfy this *Althen* prong, which is necessary to be successful in the program, a petitioner must offer "preponderant proof that the onset of symptoms occurred within a timeframe for which, given the medical understanding of the disorder's etiology, it is medically acceptable to infer causation-in-fact." *de Bazan v. Sec'y of HHS,* 539 F.3d 1347, 1352 (Fed. Cir. 2008).  In this case, petitioner has offered no literature or Program decisions suggesting that any vaccine, let alone influenza vaccine could (or has been successfully established to) cause a SIRVA injury three months post-vaccine.

Having extensively reviewed the medical records, as summarized above, and upon consideration of the totality of the circumstances, I conclude that the petition lacked a reasonable basis at the time of its filing and during the pendency of the case.  The glaring deficiency is the three month delay between petitioner's vaccine in his left arm on October 7, 2013 and the first complaint of left arm/shoulder pain on January 9, 2014.  Pet. Ex. 1 at 1; Ex. 2 at 50.  Likewise, petitioner saw his doctor on October 10, 2013 and November 1, 2013, without complaint of left arm/shoulder pain.  Pet. Ex. 2 at 50-62.

Succinctly stated, petitioner received a flu vaccine in his left arm on October 7, 2013. Pet. Ex 1 at 1.  The first notation of any left arm or shoulder pain was on January 9, 2014, some three months after his vaccine.  The pain petitioner was experiencing in the left shoulder and arm was specifically noted by petitioner and his PCP to have started three to four days prior to his January 2014 visit, on or about January 3, 2014.  Pet. Ex 2 at 50.  Neither petitioner's PCP, nor the examining physician at East Tennessee Brain and Spine, attributed petitioner's left arm pain to the flu vaccine.  *See generally* Pet. Exs. 2; 5.  Additionally, in all the time that this case was pending, petitioner did not submit any evidence supporting his theory of causation.  Therefore, I find that petitioner did not have reasonable basis at any point during the pendency of this case.

### V.      Conclusion

For the reasons contained herein, I hereby **DENY** an award of attorney's fees and costs. The clerk of the court shall enter judgment in accordance herewith.[4]


**IT IS SO ORDERED.**

<u>**s/Mindy Michaels Roth**</u>
Mindy Michaels Roth
Special Master

_____

[4] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. *See* Vaccine Rule 11(a).